SUPERIOR COURT
OF THE
STATE OF DELAWARE

**T. HENLEY GRAVES**
*RESIDENT JUDGE*

**SUSSEX COUNTY COURTHOUSE**
**1 THE CIRCLE, SUITE 2**
**GEORGETOWN, DE 19947**
**(302) 856-5257**

November 7, 2016

Julianne E. Murray, Esquire
MurrayPhillips, P.A.
109 N. Bedford Street
Georgetown, Delaware 19947

Ann Marie Johnson, Esquire
Department of Justice
Carvel State Office Building
820 North French Street, 6th Floor
Wilmington, Delaware 19801

Re:     ***Richardson v. Board of Pension Trustees***,
        C.A. No. S16A-02-002

        On Appeal from the Board of Pension Trustees:     REVERSED IN PART;
                                                          AFFIRMED IN PART

                    Date Submitted:     August 17, 2016
                    Date Decided:       November 7, 2016

Dear Counsel:

Pending before the Court is A. Brad Richardson's appeal from a decision of the Board of

Pension Trustees ("the Board") that denied Mr. Richardson's request that he be allowed to vest

under the State of Delaware's Pension Fund after five years of credited State employment. For

the reasons discussed below, the Board's decision is reversed in part and affirmed in part.

**Procedural Background**

The matter presently before the Court arose when Mr. Richardson contacted his State of

Delaware Representative, Sean Lynn, in February of 2015 to complain that the State of Delaware

("the State") had provided him with inaccurate information about when his State pension would

vest. Mr. Richardson averred he had relied, to his detriment, upon that erroneous information in

accepting a job with the Delaware Department of Natural Resources and Environmental Control ("DNREC") in fall of 2013. Via email dated March 4, 2015, Representative Lynn contacted David Craik, the State of Delaware Pension Administrator, and asked the Office of Pensions ("OPEN") to address Mr. Richardson's request that he be grand-fathered into the five-year vesting period in effect prior to his hire date.

Mr. Craik responded to Representative Lynn and Mr. Richardson via email dated March 17, 2015, and denied Mr. Richardson's desire to be grand-fathered into the five-year vesting period. Mr. Richardson appealed Mr. Craik's decision to the Board via letter dated March 31, 2015, and requested a hearing.

The Board held a hearing on the merits on December 9, 2015. The Board issued a written Report and Recommendations, approved and adopted by the Board on January 29, 2016. The Board concluded Mr. Richardson's request was not ripe for consideration and, in the alternative, Mr. Richardson was unable to prove he reasonably relied upon the State's representations in accepting a position with DNREC. Mr. Richardson filed a timely appeal with this Court. Briefing is complete.[1]

**Factual Background**

Mr. Richardson testified at the Board hearing. He was employed by Tidewater in 2013 when he and his wife started to contemplate an early retirement. At that time, Mr. Richardson received from Tidewater an annual salary of approximately $33,000. He was fifty-seven years old. Although Mr. Richardson loved his job with Tidewater, he began to look elsewhere for

---

[1] Although briefing was completed in May, the Court did not receive the Board's complete file until August 17, 2016.

employment because he did not have a pension in connection with his position at Tidewater. Specifically, he began looking for a job with a pension package and a short vesting term. Mr. Richardson told the Board he applied for employment opportunities with the State of Delaware after researching the State's pension benefits on-line through the OPEN website. The OPEN website Mr. Richardson consulted contained what turned out to be inaccurate information, specifically, that a State employee became eligible for a service pension at age sixty-two after five years of credited State service.

Mr. Richardson testified he interviewed for two positions with the State. At each interview, Mr. Richardson inquired about the State's pension plan and each interviewer directed him to the State's website for information about State benefits.

On October 23, 2013, DNREC offered Mr. Richardson a position in the Division of Hazardous Solid Waste with an annual salary of $44,094. Prior to accepting the offer, Mr. Richardson double-checked the State's OPEN website and found the same information cited above regarding pension eligibility. Mr. Richardson accepted DNREC's offer of employment and began working for DNREC on November 18, 2013.

Soon after, Mr. Richardson testified he had a conversation with a friend wherein this friend told Mr. Richardson she believed the vesting period for a State pension was ten years. Mr. Richardson again checked OPEN's website, which remained unchanged.

On April 29, 2014, Mr. Richardson attended a State pension workshop where he learned from OPEN employees for the first time that he would not vest in a State pension plan until he had completed ten years of service. Mr. Richardson emphatically testified he would not have taken the job with DNREC if he had known he would not have vested until after ten years.

3

David Craik, Pension Administrator for the State, testified on behalf of the State. He told the Board that the change in the vesting period was passed via House Bill 81, which took effect on January 1, 2012. Mr. Craik testified that other pages of the OPEN website referenced House Bill 81 and it was also referenced in the "Frequently Asked Questions" area of the website. Mr. Craik testified OPEN fielded a number of questions about the bill because the bill had many components. Mr. Craik further testified that the State could change the vesting period via legislation at any point for a non-vested State employee. In fact, there have been other instances when benefits have been decreased for non-vested employees.

Finally, Mr. Craik acknowledged the information on the web page cited by Mr. Richardson contained inaccurate information regarding the pension vesting period through May of 2014.

By way of written decision, the Board concluded Mr. Richardson's request was not ripe for consideration and, in any event, Mr. Richardson was unable to show he had reasonably relied upon the representations made on the OPEN website in accepting a position with DNREC.

## Discussion

This Court has repeatedly emphasized the limited extent of its appellate review of administrative decisions. The Court must ensure only that the Board's decision is supported by substantial evidence in the record and free from legal error.[2] Substantial evidence means "such

---

[2] *George v. Board of Pension Trustees*, 2009 WL 406819, at *5 (Del. Super. Jan. 29, 2009); 29 *Del. C.* § 8308(c)(9)d. ("The Board's final decision may be appealed to the Superior Court within 30 days after it is mailed to the parties by the Board. The appeal shall be on the record established at the hearing.").

4

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] The Court's review is limited: "It is not the appellate court's role to weigh the evidence, determine credibility questions or make its own factual findings, but merely to decide if the evidence is legally adequate to support the agency's factual findings."[4]

## A.    Ripeness

At the outset, the Board concluded Mr. Richardson's request was not "ripe" for consideration. In so doing, the Board noted Mr. Richardson had not yet worked for DNREC for five years: "Given his short period of employment with DNREC, he would not be entitled to a pension currently even if the five year vesting period applied to him, for at least another three and one half years."[5]

Whether a matter is ripe for consideration is a question of law that this Court reviews *de novo*.[6]

The Delaware Supreme Court has recently summarized the case law as it pertains to the issue of ripeness:

> Delaware courts decline to exercise jurisdiction over a case unless the underlying controversy is ripe, *i.e.*, has "matured to a point where judicial action is appropriate." That principle is sometimes expressed in terms of the adage that Delaware courts do not render advisory or hypothetical opinions. The underlying purpose of that principle is to conserve limited judicial resources and to avoid

---

[3] *Gorrell v. Division of Vocational Rehab.*, 1996 WL. 453356, at *2 (Del. Super. July 31, 1996).

[4] *McManus v. Christiana Serv. Co.*, 1997 WL 127953, at *1 (Del. Super. Jan. 31, 1997).

[5] Report and Recommendations, adopted and approved by the Board on January 29, 2016, at 4 (hereinafter, "Bd. Dec. at ___").

[6] *See Future Ford Sales, Inc. v. Public Serv. Comm'n*, 654 A.2d 837, 842 (Del. 1995).

rendering a legally binding decision that could result in premature and possibly unsound lawmaking.

A ripeness determination requires a *common sense assessment* of whether the interests of the party seeking immediate relief outweigh the concerns of the court "in postponing review until the question arises in some more concrete and final form." Generally, a dispute will be deemed ripe if "litigation sooner or later appears to be unavoidable and where the material facts are static." Conversely, a dispute will be deemed not ripe where the claim is based on "uncertain and contingent events" that may not occur, or where "future events may obviate the need" for judicial intervention.[7]

Each party cites a different portion of the above language to advance his or its respective position. The Court finds Mr. Richardson's argument more persuasive.

Although it is true that Mr. Richardson may fail to complete five years of credited service with the State and thus fail to vest, common sense dictates that the matter be addressed now. Mr. Richardson does not seek a determination that he is entitled to vest at this time; he seeks a determination from the Court that, should he continue to be employed by the State, at the conclusion of five years of service he will be able to vest. Requiring Mr. Richardson to work for the State for five years prior to bringing his claim would put an undue burden on Mr. Richardson when, in fact, Mr. Richardson has identified a conflict and seeks to have it clarified before he suffers additional harm. Moreover, the Court's decision will clarify the law for many a state employee who may have visited the State's OPEN website between January of 2012 and May of 2014 for information regarding benefits for State employees. This decision will not only clarify Mr. Richardson's legal standing but will deter future repetitive litigation on this matter.

In sum, a common sense assessment of the facts of this case compels the Court to rule on

---

[7] *XL Speciality Ins. Co. v. WMI Liquidating Trust*, 93 A.3d 1208, 1217-18 (Del. 2014) (emphasis added) (citations omitted).

the controversy at this time. The Board's opinion that Mr. Richardson's claim was not ripe is reversed. The matter is now ripe for decision.

**B.      Administrative Estoppel**

Mr. Richardson argues the Board erred in finding the State is not administratively estopped from applying the five year vesting period to him.

As established by the Delaware Supreme Court in *Harmon v. State*, to prevail on a promissory estoppel claim, Mr. Richardson must establish that:

> (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise.[8]

As a general rule, when the State's officers are exercising governmental functions, a plaintiff may not complain that the State has been administratively estopped from acting. However, an exception is made in the context of employment.[9]

OPEN argues Mr. Richardson is unable to meet any of the four elements of the *Harmon* test.

The Board made the following findings of fact and conclusions of law as it pertains to the merits of Mr. Richardson's request:

> [OPEN] admits that the reference to the five year vesting period had not been changed in a timely manner to reflect the changes of HB 81. However, Mr. Craik testified that there were other references to the change in the FAQs page and on other pages of the website. The failure to change the five year reference was a mistake, and not intended to mislead a new employee, seeking employment.

---

[8] *Harmon v. State*, 62 A.3d 1198, 1200-01 (Del. 2013) (citation omitted).

[9] *Id*.

7

Moreover, the Board is not persuaded that Mr. Richardson relied solely upon the incorrect webpage in making his job change, or that he relied to his detriment, given the nearly 30% increase in salary he earned in the DNREC job. Finally, the Board finds that Mr. Richardson is still entitled to a state pension if he works the requisite number of years, and the fact that Mr. Richardson must work approximately eight more years to vest for a pension, rather than three years, is not, in and of itself, manifestly unjust.[10]

The Court concludes the Board's decision is supported by substantial evidence and free from legal error.

In particular, the Court finds Mr. Richardson is unable to satisfy the third requirement of the *Harmon* test: he cannot establish that he relied on the information on the website to his detriment when accepting the position with DNREC. He received a large salary increase and the right to vest - at some point - in a employee pension plan. That is to say, his acceptance of the State's offer put him in a significantly better financial position as he contemplated early retirement.

The Court also notes the length of time between when Mr. Richardson learned the vesting period was ten years - April of 2014 - and when he lodged a complaint with his State Representative - February of 2015 - calls into doubt Mr. Richardson's detrimental reliance on the website's representation of the vesting period.

The Court also finds dubious Mr. Richardson's assertion that he is able to satisfy the second prong of the *Harmon* test; that is, the State reasonably expected potential employees to rely upon one, specific website for information containing a matter as serious as a retirement plan. Mr. Craik testified OPEN's website contained other areas that included correct information regarding pension benefits. The letter from DNREC offering Mr. Richardson a position

---

[10] Bd. Dec. at 5.

originated with the Human Resources Office and contained a telephone number for the same. The letter identified Mr. Richardson's supervisor and provided her telephone number "if you have any questions about... the specifics of the position."[11] This letter also stated, in bold type, "A Benefits Representative will contact you before your first day on the job to schedule an appointment."[12] Although Mr. Richardson was not questioned about whether he spoke with a Benefits Representative at the hearing, the Court is confident the State provided Mr. Richardson with the ability to consult with other, human,[13] resources with whom he could clarify his eligibility for a State service pension.

Finally, Delaware law holds that State employees have contractual rights in a state pension plan.[14] However, those contractual rights do not exist until the pension is vested.[15] That is to say, the State of Delaware could change the vesting period for a State employee like Mr. Richardson *at any point* until he had vested. Although this fact was not considered by the Board, it is case-dispositive as well.

For these reasons, the Court concludes the Board's decision that Mr. Richardson failed to establish the elements of administrative promissory estoppel is supported by substantial evidence

---

[11] Record on Appeal 000048.

[12] Record on Appeal 000049.

[13] *Compare Blackwell v. Board of Pension Trustees*, 1997 WL 718630, at \*3 (Del. Super. Nov. 19, 1997) (holding the State administratively estopped when the plaintiff relied upon representations made by an employee of OPEN who "expressly" informed him that he could continue working part-time and doing so would not prohibit him from receiving pension benefits based upon his full-time salary).

[14] *Petras v. State Bd. of Pension Trustees*, 464 A.2d 894, 895-96 (Del. 1983).

[15] *Id*. at 896.

and free from legal error.

## Conclusion

As discussed above, the Board's decision that Mr. Richardson's claim was not ripe for consideration is REVERSED and its decision that Mr. Richardson is unable to prevail on his promissory estoppel claim is AFFIRMED.

IT IS SO ORDERED.

Very truly yours,

*/s/ T. Henley Graves*

T. Henley Graves

oc:     Prothonotary
cc:     The Board of Pension Trustees

10